

AARON R. EASLEY
(908) 237-1660
aeasley@sessions.legal

September 29, 2021

Honorable Brian R. Martinotti
50 Walnut Street
Newark, NJ 07102

    Re:    *Fenton Williams v. Radius Global Solutions LLC*
             Case No. 2:21-cv-10954-MCA-JBC

Dear Judge Martinotti:

        Sessions, Israel & Shartle represents Radius Global Solutions, LLC ("RGS") in the above matter. RGS requests a pre-motion conference for entry of a briefing schedule relative to its intended Motion for Judgment on the Pleadings seeking dismissal for Lack of Standing or, alternatively, for Failure to State a Claim.

        This case arises from a debt collection letter that RGS sent to Plaintiff. Plaintiff does not contend that RGS's letter said anything abusive or deceptive. Instead, Plaintiff's complaint is that RGS did not print and mail the letter itself but did so through "a commercial mail house," i.e., RGS' letter vendor.

        The use of letter vendors by debt collectors has been common practice for decades and has been repeatedly approved of by the federal regulatory bodies tasked with enforcing the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, *i.e.*, the Federal Trade Commission ("FTC") and the Consumer Financial Protection Bureau ("CFPB"). In April 2021, the Eleventh Circuit threw a wrench into this long-standing practice, concluding that transmitting data to a letter vendor potentially violates a provision in the FDCPA governing "third party communications," § 1692c(b).[1] *See Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341 (11th Cir. 2021). *Hunstein* has led to a flood of copycat lawsuits looking to cash-in on the disruption created by the Eleventh Circuit's decision. This is one such case. Plaintiff asserts that by using a letter vendor, RGS violated the FDCPA. Plaintiff's claim should be dismissed as a matter of law and on the face of the Complaint for three broad reasons.

---

[1] Section 1692c(b) states: Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

3 Cross Creek Drive     Flemington, New Jersey     08822-4938
(908) 237-1660     (877) 334-0661     www.sessions.legal
CALIFORNIA • COLORADO • FLORIDA • GEORGIA • ILLINOIS • LOUISIANA • NEW JERSEY • NEW YORK • PENNSYLVANIA • TEXAS

**SESSIONS, ISRAEL & SHARTLE**
ATTORNEYS AT LAW

September 29, 2021 – Page 2

**First**, RGS's transmission of information to its letter vendor is not a "communication" "in connection with the collection of a debt. *See* § 1692c. It was a transmittal between a debt collector and another company hired to perform a ministerial task. The transmittal to the letter vendor did not include a demand for payment in a logical sense; the animating purpose of the transmittal was not to induce payment; RGS was not demanding payment from its letter vendor. As such, the transmittal is not governed by § 1692c(b).

Section 1692c(b) purports to set forth with whom a debt collector may communicate "in connection with the collection of a debt." Numerous courts have concluded the "in connection with the collection of a debt" language places a limitation on whether the FDCPA applies, and that a communication is not necessarily "in connection with the collection of a debt" simply because it relates to debt collection. Rather, for a communication to be "in connection with the collection of a debt," "'an animating purpose of the communication must be to induce payment.'" *Krechner v. Nationstar Mortg. LLC,* 2015 WL 9260055, at *3 (E.D. Pa. Dec. 18, 2015) (quoting *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). *See also Gburek v. Litton Loan Serv. LP,* 614 F.3d 380, 385 (7th Cir.2010).

**Second**, Plaintiff lacks standing to enforce the FDCPA here because he does not allege that he suffered a "concrete" injury due to the supposed statutory violation.[2] For this same reason, the District Court for the Eastern District of New York in this Court's sister circuit has dismissed no less than seven separate *Hunstein*-based FDCPA cases. *See In re FDCPA Mailing Vendor Cases,* 2021 WL 3160794, *6 (E.D.N.Y. July 23, 2021); *Bush v. Optio Sols., LLC*, 2021 WL 3201359, *3 (E.D.N.Y. July 28, 2021).

Critical here, the violation of a federal statute, alone, is not enough to confer standing, even where the statute provides for a private right of action. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207–08 (2021). To have standing to pursue a claim based on an alleged violation of a federal statute, the plaintiff must have either suffered tangible physical or economic injury, or the plaintiff's alleged injury must have "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts"—that is, the plaintiff must identify "a close historical or common-law analogue for their asserted injury." *Id.* at 2205.

Plaintiff does not allege he suffered tangible physical or economic injury due to RGS's transmitting information to its letter vendor. *See generally* Dkt. 1. RGS anticipates Plaintiff will argue that RGS's sending of information to its letter vendor is akin to the "unreasonable publication of private facts" tort because he specifically asserts RGS disclosed his personal and legally protected information to an unauthorized third party. The "unreasonable publication of private facts" tort is one of the handful of invasion of privacy torts recognized in the common law. Restatement (Second) of Torts § 652D (1977)). It applies where: (1) the defendant "publishes" facts about the plaintiff; (2) the published facts are private facts; (3) the facts are not of public concern; and (4) the publication would be highly offensive to a reasonable person. *Id.* This tort

---

[2] Plaintiff alleges conclusory and undefined "actual damages" that do not rise to the level of concrete injury. [Dkt. 1 at ¶ 52.]

**SESSIONS, ISRAEL & SHARTLE**
ATTORNEYS AT LAW

September 29, 2021 – Page 3

differs dramatically from the complained-of conduct here.

RGS's sending of information to its letter vendor does not qualify as "publication," for several reasons. "Publication" requires "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a; 77 C.J.S. Right of Privacy and Publicity § 32 (same); *Bolick v. DFS Servs. LLC*, 2011 WL 4359987, *2 (E.D. Pa. Sept. 16, 2011) (same). It is not enough "to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Id. See, e.g., Avraham v. Golden*, 2020 WL 2214535, *8 (D.N.J. May 7, 2020) (concluding that the defendant's sending details about the plaintiff's sex life to a handful of people did not qualify as "publication," but that posting a publicly viewable YouTube video discussing those same facts did); *Bolick*, 2011 WL 4359987, *2 (concluding that the defendant's communicating information about the plaintiff to one other, unrelated company did not rise to the level of "publication"). Even if transmitting information to one or a handful of third-parties qualified as "publication," according to long-standing common law agency principles, transmitting information to one hired to perform a specific task does not.

**Third**, Plaintiff's theory fails as a matter of statutory interpretation for several reasons, including: (1) it ignores the purpose behind § 1692c(b), which is to protect consumers from the reputational damage caused by having their personal affairs disclosed to "friends, neighbors, or an employer," not service providers like letter vendors; (2) communications with one hired to perform a task are not "third-party communications" under long-standing agency principles; (3) Plaintiff's theory gives short shrift to the FTC's and CFPB's interpretation of the FDCPA, and their repeated approval of debt collectors' use of service providers; and (4) Plaintiff's hyper-literal interpretation of the "third-party communications" provision risks the provision being struck down as an overly broad restriction on commercial speech. Indeed, reading § 1692c(b) to prohibit communications with letter vendors potentially would lead to absurd results, namely, prohibiting a company from communicating with its own employees or using the telephone.

To be clear, RGS is *not* arguing that it can send *any* information about a consumer or a debt to *anyone*, or that a consumer whose identity is stolen due to the dissemination of information has no avenue of relief. There may be situations where a company's dissemination of information is actionable, *e.g.*, where the information falls into the hands of identity thieves or a consumer's family, friends, employers, potential creditors, etc. But that is not the case here. Simply put, Plaintiff's theory goes too far.

For these reasons, Plaintiff lacks standing or, alternatively, fails to state claim for relief, and RGS requests entry of a briefing schedule for its Motion to Dismiss Plaintiff's claim.

                                      Respectfully submitted,
                                      /s/ Aaron R. Easley
                                      Aaron R. Easley

ARE:cjg c:\users\drbarry\appdata\local\temp\prolaw_objects\5ac13745a1404780bc97bbe8793fb2db\document in prolaw.doc