UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-----------------------------------------------------X
FENTON WILLIAMS                                        Civil Action No.: 2:21-cv-10954-BRM-JBC


                     Plaintiffs,


RADIUS GLOBAL SOLUTIONS LLC
                     Defendant.
-----------------------------------------------------X

## PLAINTIFF'S RESPONDING BRIEF
## OPPOSING DEFENDANT'S MOTION FOR DISMISSAL

Law Offices of Gus Michael Farinella, PC
110 Jericho Turnpike – Suite 100
Floral Park, NY 11001
*Attorney for Plaintiffs*

*On the brief:*
Ryan Gentile, Esq.

TABLE OF CONTENTS……………………………………………………………2

TABLE OF AUTHORITIES…………………………………………………...……4

PRELIMINARY STATEMENT……………………………………………………8

PROCEDURAL HISTORY…………………………………………………………9

FACTUAL BACKGROUND………………………………………………………9

LEGAL STANDARD FOR A MOTION FOR JUDGMENT ON THE PLEADINGS…………11

THE FAIR DEBT COLLECTION PRACTICES ACT……………………………………12

LEGAL ARGUMENTS………………………………………………………………13

      POINT I:     STATUTORY INTERPRETATION AND 15 U.S.C. § 1692c(b)………13

      POINT II:    DEFENDANT'S TRANSMISSION OF INFORMATION TO THE LETTER VENDOR IS A "COMMUNICATION" AND WAS MADE "IN CONNECTION WITH THE COLLECTION" OF PLAINTIFF'S ALLEGED DEBT…………………………………………………………14

              A. Introduction………………………………………………………14

              B. Defendant's Transmission Of Information To The Letter Vendor Is A "Communication" As That Term Is Defined By The FDCPA………15

                 1. The FDCPA's Definition of "Communication"…………………15

                 2. Defendant's Transmission of Information Was a "Communication"………………………………………………15

                 3. Case Law On This Issue Has Held A Debt Collector's Transmission of Information To The Letter Vendor Is A "Communication"………………………………………………15

                 4. Conclusion………………………………………………………15

              C. Defendant's Communication With The Letter Vendor Was Made "In Connection With The Collection" Of Plaintiff's Alleged Debt……...17

                 1. The Plain Meaning Of "In Connection With"…………………...17

2. Defendant's Communication Of Information To The Letter Vendor Was "In Connection With" The Collection Of Plaintiff's Alleged Debt……………………………………………………………………17

3. Case Law Holds That Defendants Communications Were "In Connection With" The Collection Of Plaintiff's Debt…………..18

4. Conclusion………………………………………………………22

D. Conclusion…………………………………………………………...22

POINT III:    DEFENDANT'S REMAINING ARGUMENTS ARE MISPLACED…………23

A. Defendant's Belief As To What Congress's Actual Purpose Was In Drafting § 1692c(b) Was Does Not Defeat Plaintiff's Claims…………..23

B. Defendant's Agency Argument Is Unavailing…………………………..25

C. Defendant's Arguments Regarding FTC And CFPB Guidance Are Misplaced…………………………………………………………..26

1. Defendant's Citation to the 1998 FTC Staff Commentary on the FDCPA, 53 FR 50097-02………………………………..26

2. Defendant's Citations to CFPB Guidance Are Misplaced…..27

D. Any "Absurd Results" Defendant's Claim Would Result From A Ruling Against Them In This Case Would Be Congress' Responsibility To Fix……………………………………………………………28

E. Defendant's First Amendment Argument Must Be Rejected Outright….29

CONCLUSION…………………………………………………………………..29

## TABLE OF AUTHORITIES

### CASES

Bostock v. Clayton Cty., Georgia,
    140 S. Ct. 1731 (2020)…………………………………………………………...13

Brown v. Card Serv. Ctr.,
    464 F.3d 450 (3d Cir. 2006)…………………………………………………...12

Caprio v. Healthcare Revenue Recovery Group, LLC,
    709 F.3d 142 (3d Cir. 2013)…………………………………………………...12

C.I.R. v. Lundy,
    516 U.S. 235 (1996)…………………………………………………………...23

Connecticut Nat. Bank v. Germain,
    503 U.S. 249 (1992)…………………………………………………………...13

Covington v. Int'l Ass'n of Approved Basketball Offs.,
    710 F.3d 114 (3d Cir. 2013)…………………………………………………...25

Demarest v. Manspeaker,
    498 U.S. 184 (1991)…………………………………………………………...23

Douglass v. Convergent Outsourcing,
    765 F.3d 299 (3d Cir. 2014)………………………………………………12, 13

Downey v. Pennsylvania Dep't of Corr.,
    968 F.3d 299 (3d Cir. 2020)…………………………………………………...13

Dutton v. Wolpoff & Abramson,
    5 F.3d 649 (3d Cir. 1993)……………………………………………………...23

Gebhart v. Steffen,
    574 F. App'x 156 (3d Cir. 2014)……………………………………………...11

Goodson v. Bank of Am., N.A.,
    600 F. App'x 422 (6th Cir. 2015)………………………………………...20, 21

Grden v. Leikin Ingebr & Winters PC,
    643 F.3d 169 (6th Cir. 2011)…………………………………………………...21

Greater Philadelphia Chamber of Com. v. City of Philadelphia,
    949 F.3d 116 (3d Cir. 2020)…………………………………………………...29

Gregory v. Nationstar Mortg., LLC,
    2014 WL 1875167 (D.N.J. May 9, 2014)……………………………………………..21

Griffin v. Oceanic Contractors, Inc.,
    458 U.S. 564 (1982)……………………………………………………………..23

Hunstein v. Preferred Collection & Mgmt. Servs.,
    994 F.3d 1341 (11th Cir. 2021)……………………………………………8, 18, 19, 21

Hunstein v. Preferred Collection & Mgmt. Servs.,
    17 F.4th 1016 (11th Cir. Oct. 28, 2021)………………………………………..8, 18, 19

Jensen v. Pressler & Pressler,
    791 F.3d 413 (3d Cir. 2015)………………………………………………………..12

Keeley v. Loomis Fargo & Co.,
    183 F.3d 257 (3d Cir. 1999)………………………………………………………..25

Khimmat v. Weltman, Weinberg and Reis Co., LPA,
    2022 WL 356561 (E.D. P.A. February 7, 2022)……………………………….passim

Koby v. ARS Nat'l Servs.,
    2010 WL 1438763 (S.D. Cal. Mar. 29, 2010)……………………………………….8

Krechner v. Nationstar Mortg. LLC,
    2015 WL 9260055 (E.D. Pa. Dec. 18, 2015)……………………………………….21

Idahoan Fresh v. Advantage Produce, Inc.,
    157 F.3d 197 (3d Cir. 1998)………………………………………………………...13

In re Philadelphia Newspapers, LLC,
    599 F.3d 298 (3d Cir. 2010)…………………………………………………….13, 14

Jablonski v. Pan Am. World Airways, Inc.,
    863 F.2d 289 (3d Cir. 1988)………………………………………………………...11

Lesher v. Law Offices of Mitchell N. Kay, PC,
    650 F.3d 993 (3d Cir. 2011)………………………………………………………..12

McGirt v. Oklahoma,
    140 S. Ct. 2452 (2020)……………………………………………………………..13

Muhammad v. Sarkos,
    2014 WL 4418059 (D.N.J. Sept. 8, 2014)…………………………………………..11

Revell v. Port Auth. of N.Y. & N.J.,
    598 F.3d 128 (3d Cir. 2010)…………………………………………………..11

Rosenau v. Unifund Corp.,
    539 F.3d 218 (3d Cir. 2008)…………………………………………………11, 12

Simon v. FIA Card Servs., N.A.,
    732 F.3d 29 (3d Cir. 2013)………………………………………………..20, 21

Szczurek v. Prof'l Mgmt. Inc.,
    627 F. App'x 57 (3d Cir. 2015)………………………………………………11

Turbe v. Gov't of V.I.,
    938 F.2d 427 (3d Cir. 1991)…………………………………………………11

Wilson v. Quadramed Corp.,
    225 F.3d 350 (3d Cir. 2000)…………………………………………………12

## STATUTES

15 U.S.C. § 1692(a)………………………………………………………..24

15 U.S.C. § 1692a(2)………………………………………………………15

15 U.S.C. § 1692c(b)……………………………………………………passim

28 U.S.C. § 1821………………………………………………………..23

Cal. Civ. Code § 1788.12(e)………………………………………………24

Fla. Stat. §559.7(5)………………………………………………………24

Iowa Code § 537.7103(3)(a)(2)……………………………………………24

Md. Code, Commercial Law, § 14-202………………………………………24

Vt. Code R. 3-2-103:CP 104.3(e) …………………………………………24

Wis. Stat. § 427.104………………………………………………………24

## REGULATIONS

12 C.F.R. § 1006.34(c)(4)(iii)………………………………………………29

53 FR 50097-02…………………………………………………………26

86 FR 5766-01…………………………………………………………26

**RULES**

Fed. R. Civ. P. 12(c)………………………………………………………………………..11

**OTHER AUTHORITIES**

Bryan A. Garner, Garner's Dictionary of Legal Usage (3d ed. 2011)………………………17, 19

Oxford Dictionary of English (2010)………………………………………………………..17, 19

Webster's Third New International Dictionary (1961)……………………………………15, 17

7

## PRELIMINARY STATEMENT

Plaintiff, Fenton Williams ("Plaintiff"), through his attorneys, respectfully submits this Memorandum of Law in opposition to Defendant, Radius Global Solutions LLC's ("Radius" or "Defendant"), Motion for Judgment on the Pleadings [Doc. No. 10] (the "Motion"). Defendant's Motion claims that the plain language of § 1692c(b) of the Fair Debt Collection Practices Act ("FDCPA") does not mean what it says. Instead, Defendant insists, the plain language of the statute should be read to have an implied exception for their business practice. This carved-out exception cannot be implied in a statute where the plain language is explicitly clear and *already contains explicit exceptions*. Section 1692c(b) of the FDCPA is very clear and plainly written, there can be no communication by a debt collector with <u>*any*</u> party other than the consumer, the consumer's attorney, a credit reporting agency, the creditor, the attorney of the creditor, or the attorney of the debt collector in connection with the collection of any debt.

As demonstrated in detail *infra*, Defendant's Motion should be denied because it goes directly against the plain language of the FDCPA, which must be given its plain meaning, absent any ambiguity. "Defendant may not ignore mandated sections of the FDCPA simply so that they may engage in a form of communication…that they find most efficient." <u>Koby v. ARS Nat'l Servs</u>., 2010 WL 1438763, at *6 (S.D. Cal. Mar. 29, 2010). Further, the one reported Circuit case directly on the issue presently before this Court has found a violation. *See* <u>Hunstein v. Preferred Collection & Mgmt. Servs</u>., 994 F.3d 1341 (11th Cir. 2021). Even after potential scrutiny by the Supreme Court, the Eleventh Circuit doubled down on its decision and affirmed that a communication with a letter vendor is a violation of § 1692c(b). <u>Hunstein v. Preferred Collection & Mgmt. Servs</u>., 17 F.4th 1016 (11th Cir. Oct. 28, 2021) ("<u>Hunstein II</u>"). Furthermore, the only case from within the Third Circuit to review the issues presently before this Court has also found

a violation on this exact issue. *See* <u>Khimmat v. Weltman, Weinberg and Reis Co., LPA</u>, 2022 WL 356561 (E.D. P.A. February 7, 2022).

In light of the logical analysis of the Eleventh Circuit (twice), the Khimmat decision, and the plain language of the FDCPA, it is clear that Plaintiff's claim in the Complaint is actionable. Any relief Defendant wishes regarding this issue must provided to them by Congress and not the Court.

## PROCEDURAL HISTORY

Fenton Williams ("Plaintiff") filed his complaint on May 7, 2021 [Doc. No. 1] (the "Complaint"). Plaintiff's Complaint alleges that Radius violated various provisions of the FDCPA. On January 14, 2021, Radius filed a Motion for Judgment on the Pleadings. Plaintiff, by and through his undersigned counsel, hereby submits this Brief in Opposition to Defendant's Motion. Plaintiff respectfully requests that this Court deny Defendants' Motion in its entirety.

## FACTUAL BACKGROUND

The following facts are drawn from Plaintiff's Complaint and must be accepted as true for the purposes of deciding the Motion. Plaintiff is a natural person, a citizen of the state of New Jersey, and resides within this District (Cmplt., ¶7). Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) of the FDCPA (Cmplt., ¶8). Radius is a limited liability corporation whose principal purpose is the collection of debts using the mail and telephone and who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another (Cmplt., ¶¶10-11). Radius is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the FDCPA (Cmplt., ¶14).

Sometime around October 29, 2019, Plaintiff allegedly incurred a debt to Newark Beth Israel Emergency Medical Association, LLC ("Newark Beth Israel") related to emergency

medical services rendered to his newborn son for which the Plaintiff was allegedly financially liable (the "Debt"). (Cmplt., ¶15). Plaintiff's alleged Debt to Newark Beth Israel is a "debt" as defined by 15 U.S.C. § 1692a(5). (Cmplt., ¶18). *Plaintiff disputes the Debt and denies owing any monies to Newark Beth Israel.* (Cmplt., ¶19).[1]

On or about July 28, 2020, Radius mailed or caused to be mailed a collection letter to Plaintiff (the "Letter"). The Letter is attached as Exhibit A to the Complaint. (Cmplt., ¶28). Rather than prepare and mail the Letter on its own, Radius sent information to a commercial mail house (the "Letter Vendor") (Cmplt., ¶29). Radius disclosed to the Letter Vendor information including but not limited to:

a. Plaintiff's status as a debtor;
b. That Plaintiff supposedly owed $731 to Newark Beth Israel hospital;
c. The fact that the Debt concerned Plaintiff's newborn son's medical treatment;
d. The dates of the medical treatments rendered to Plaintiff's newborn son;
e. Plaintiff's son's name;
f. The account number Newark Beth Israel had for Plaintiff's son's medical treatments; and
g. Other highly personal pieces of information.

(Cmplt., ¶30). [2]

The Letter Vendor then populated some or all this information into a pre-written template, printed, and mailed the Letter to Plaintiff's residence in New Jersey. (Cmplt., ¶31).

---

[1] Defendant's Motion states on Page 1, "Plaintiff does not state that he does not owe the debt…". This statement by Defendant in their Motion is an outright falsehood based on simple review of Plaintiff's Complaint and Radius's own records. Plaintiff's Complaint at Paragraph 19 specifically states that Plaintiff denies owing any debt or monies to Newark Beth Israel. Additionally, Plaintiff disputed the Debt in writing to Radius after receiving the letter attached as Exhibit A to the Complaint and presumably, Radius has that dispute letter in their records.

[2] Discovery had not been conducted in this matter. Additional information, other than what is apparent from the face of the letter, may have been provided by Radius to the Mail House. However, at this time, it is unclear what exact information Radius gave to the Mail House other than what is apparent from reading the Letter and listed above.

The Defendant's unauthorized and prohibited communications caused Plaintiff emotional distress since he and his son's confidential, legally protected medical and personal information were unlawfully disseminated to third parties. (Cmplt., ¶41).

## <u>LEGAL STANDARD FOR A MOTION FOR JUDGMENT ON THE PLEADINGS</u>

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pursuant to Rule 12(c), the movant for judgment on the pleadings must establish: (1) that no material issue of fact remains to be resolved; and (2) the entitlement to judgment as a matter of law. *See* <u>Rosenau v. Unifund Corp.</u>, 539 F.3d 218, 221 (3d Cir. 2008) (citing <u>Jablonski v. Pan Am. World Airways, Inc</u>., 863 F.2d 289, 290-91 (3d Cir. 1988). In resolving a motion made pursuant to Rule 12(c), the Court must view the facts in the pleadings and the inferences therefrom in the light most favorable to the non-movant. *See* <u>Rosenau</u>,539 F.3d at 221.

Furthermore, even though a motion for judgment on the pleadings is appropriate after the pleadings have been closed, such a motion is reviewed under the same standards that apply to a motion to dismiss made under Rule 12(b)(6). *See* <u>Szczurek v. Prof'l Mgmt. Inc</u>., 627 F. App'x 57, 60 (3d Cir. 2015) (citing <u>Revell v. Port Auth. of N.Y. & N.J</u>., 598 F.3d 128, 134 (3d Cir. 2010)); *see also* <u>Muhammad v. Sarkos</u>, 2014 WL 4418059 (D.N.J. Sept. 8, 2014) ("Where a defendant's motion is one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), it is treated under the same standards as a Rule 12(b)(6) motion where it alleges that a plaintiff has failed to state a claim.") (citing <u>Turbe v. Gov't of V.I.</u>, 938 F.2d 427, 428 (3d Cir. 1991); <u>Gebhart v. Steffen</u>, 574 F. App'x 156, 157 (3d Cir. 2014)).

## THE FAIR DEBT COLLECTION PRACTICES ACT

As noted by the Third Circuit, the FDCPA "is an explicitly remedial statute" that is "construe[d] . . . broadly, so as to effect its purpose." Jensen v. Pressler & Pressler, 791 F.3d 413, 418 (3d Cir. 2015) (citing Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006)). To that end, "[l]ender-debtor communications potentially giving rise to claims under the FDCPA should be analyzed from the perspective of the least sophisticated debtor." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Brown, 464 F.3d at 454. The "least sophisticated debtor" standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000). "The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." Lesher v. Law Offices of Mitchell N. Kay, PC, 650 F.3d 993, 997 (3d Cir. 2011) (internal citations omitted). Yet, it nevertheless "prevents liability for bizarre or idiosyncratic interpretations." Wilson, 225 F.3d at 354. Significantly, the least sophisticated debtor standard "is an objective one, meaning that the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be." Jensen, 791 F.3d at 419. The Third Circuit has repeatedly held that as "remedial legislation, the FDCPA must be broadly construed in order to give full effect…" Caprio v. Healthcare Revenue Recovery Group, LLC, 709 F.3d 142, 148 (3d Cir. 2013).

To succeed on an FDCPA claim, a plaintiff must demonstrate that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the FDCPA defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." Douglass v. Convergent Outsourcing, 765 F.3d 299,

303 (3d Cir. 2014). Elements 1, 2, and 3 above are not in dispute. In their Motion, Defendant does not argue or challenge the first three elements above. The parties only dispute element 4, namely whether Defendant's conduct as alleged in the Complaint violates the FDCPA. As demonstrated below, it is respectfully submitted that when accepting all the facts plead in the Complaint as true, that Defendant's conduct violated the FDCPA.

## LEGAL ARGUMENTS

### POINT I

### STATUTORY INTERPRETATION AND 15 U.S.C. § 1692c(b)

"It is the cardinal canon of statutory interpretation that a court must begin with the statutory language." In re Philadelphia Newspapers, LLC, 599 F.3d 298, 304 (3d Cir. 2010), as amended (May 7, 2010). "When the words of a statute are unambiguous, then, this first canon is also the last: `judicial inquiry is complete.'" Id. (*quoting* Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254 (1992)); *see also* Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197, 202 (3d Cir. 1998)("Where the statutory language is plain an unambiguous, further inquiry is not required…").

To determine whether statutory language is ambiguous, the Court must "read the statute in its ordinary and natural sense." Id. (quotation omitted). In doing so, the Court must take care to apply the ordinary meaning of the terms of the statute as they existed "at the time of its enactment." Bostock v. Clayton Cty., Georgia, 140 S. Ct. 1731, 1738 (2020); *see also* McGirt v. Oklahoma, 140 S. Ct. 2452, 2468 (2020)(in interpreting Congressional enactment, a court's task is to "ascertain and follow the original meaning of the law"). Courts "look to dictionary definitions to determine the ordinary meaning of a word." Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 306 (3d Cir. 2020) (quotation omitted). "A provision is ambiguous only

where the disputed language is 'reasonably susceptible of different interpretations.'" Philadelphia Newspapers, 599 F.3d at 304 (same).

As shown below, the dispute in this case turns on Plaintiff and Defendant's competing interpretations of § 1692c(b). Under that section of the FDCPA, with certain exceptions, a "debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b). The Parties' dispute turns on the interpretation of two terms in that statutory section: (1) "communicate" and (2) "in connection with the collection of any debt".

## POINT II

## DEFENDANT'S TRANSMISSION OF INFORMATION TO THE LETTER VENDOR IS A "COMMUNICATION" AND WAS MADE "IN CONNECTION WITH THE COLLECTION" OF PLAINTIFF'S ALLEGED DEBT

### A. Introduction.

The first issue raised by Defendant in their Motion is whether the Defendant's act of transmitting data to the Letter Vendor, including, at a minimum, the information contained in Paragraph 30 of the Complaint, was a "communication" that was done "in connection with the collection of [Plaintiff's] debt". As demonstrated below, Defendant's actions were clearly a "communication" as that term is defined in the FDCPA. Furthermore, this "communication" was done for the *sole purpose* of furthering Defendant's attempt to collect Plaintiff's alleged debt. Therefore, Defendants actions were clearly a "communication" that was done "in connection with" the collection of Plaintiff's Debt. As such Defendant's arguments in their Motion should be rejected.

**B. Defendant's Transmission Of Information To The Letter Vendor Is A "Communication" As That Term Is Defined By The FDCPA.**

**1. The FDCPA's Definition of "Communication".**

Although the FDCPA does not define "communicate," it defines a "communication" as the "conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). The statute does not define "medium". Because the FDCPA does not define "medium", this Court should give that word its ordinary meaning: "a channel, method, or system of communication, information, or entertainment." Webster's Third New International Dictionary, 1403 (1961).

**2. Defendant's Transmission of Information Was a "Communication".**

There is no question that Radius conveyed information regarding Plaintiff's Debt directly to the Letter Vendor. Radius admits this in their Motion [See Def. Br. p. 6]. The information Radius conveyed – including Plaintiff's name, status as a debtor, the amount he allegedly owed Newark Beth Israel, the fact that the alleged debt concerned medical services rendered to the Plaintiff's newborn child, the name of the newborn child, the dates of the medical treatments, and the hospital's account numbers associated with the medical treatments – was information regarding the Plaintiff's alleged Debt. Furthermore, Radius transmitted the information via an electronic channel – a medium. Therefore, it is respectfully submitted that Radius engaged in a "communication" with the Letter Vender when it conveyed information regarding Plaintiff's alleged Debt to them directly through a medium. Defendant's actions clearly meet the definition of a "communication" under the FDCPA, and therefore Defendant's argument that they did not engage in any "communication" to the Letter Vendor should be rejected outright.

**3.   Case Law On This Issue Has Held A Debt Collector's Transmission of Information To Their Letter Vendor Is A "Communication".**

The exact issues before this Court were recently decided on February 7, 2022, in a case entitled <u>Khimmat v. Weltman, Weinberg and Reis Co., LPA</u>, 2022 WL 356561 (E.D. P.A. February 7, 2022).[3] The material facts of <u>Khimmat</u> and this case are the same. In both cases, a consumer is suing a debt collector for disclosing information about a debt they allegedly owed to a letter vendor. Where the cases differ are: (1) the Plaintiff in this case disputes owing the Debt to Newark Beth Israel, and (2) Radius provided much more personal and confidential information about the Debt to the Letter Vendor, including but not limited to Plaintiff's newborn son's name and the dates of his medical treatments. Plaintiff respectfully submits that this Court should follow the <u>Khimmat</u> Court's reasoning when deciding this case.

In <u>Khimmat</u>, the Court had little trouble in finding that the transmission of information from the debt collector to the letter vendor was a "communication" as that term is defined by the FDCPA. After reviewing the definition of "communication" under the FDCPA, the <u>Khimmat</u> Court held:

> There is no question that [the debt collector] conveyed information to its letter vendor. The information—including [plaintiff's] name, status as a debtor, and details about the debt—was information regarding a debt. And [the debt collector] transmitted the information via an electronic channel—a medium.

> <u>Id</u>. at * 2

Based on the clear definition of "communication" in the FDPCA, the Court concluded that the debt collector's, "transmission of information to its letter vendor was a communication under the FDPCA." <u>Id.</u> at *3.

---

[3] As of the date of this Opposition, Plaintiff's attorney was unable to find any other cases from within the Third Circuit that dealt directly with the issues presently before this Court and raised in Defendant's Motion.

It is respectfully submitted that this Court should follow the decision in <u>Khimmat</u> and the plain definition of "communication" and also hold that Defendant's transmission of information to the Letter Vendor was a "communication" under the FDCPA.

**4. Conclusion**

Defendant's conveyed information about the Plaintiff and his alleged Debt to the Letter Vendor, this action clearly meets the definition "communication" as that term is defined by the FDCPA. The <u>Khimmat</u> decision above also demonstrates that Defendant's actions were clearly a communication. Therefore, it is respectfully submitted that this Court should reject Defendant's argument that they did not "communicate" with the Letter Vendor.

**C. Defendant's Communication With Its Letter Vendor Was Made "In Connection With The Collection" Of Plaintiff's Alleged Debt.**

**1. The Plain Meaning Of "In Connection With".**

The plaining meaning of "in connection with" and its cognate word, "connection" are clear. While these terms are not defined by the FDCPA, dictionaries have adopted broad definitions of both. Webster's Third defines "connection" to mean "relationship or association." <u>Connection, Webster's Third International Dictionary</u> at 481 (1961), and the Oxford Dictionary of English defines the key phrase "in connection with" to mean "with reference to [or] concerning," <u>In Connection With, Oxford Dictionary of English</u> at 369 (2010). Usage authorities further explain that the phrase "in connection with" is "invariably a vague, loose connective." <u>Bryan A. Garner, Garner's Dictionary of Legal Usage</u> 440 (3d ed. 2011).

**2. Defendant's Communication Of Information To The Letter Vendor Was "In Connection With" The Collection Of Plaintiff's Alleged Debt.**

Radius' transmission of the information described in Paragraph 30 of Plaintiff's Complaint to the Letter Vendor had a <u>relationship or association</u> with their effort to collect the

alleged Debt from Plaintiff and is directly <u>referenced to and concerned</u> the Plaintiff and his alleged Debt.

Radius's transmission or "communication" to the Letter Vendor included very specific details regarding Plaintiff's debt, including but not limited to: Plaintiff's status as a debtor, the precise amount of his debt, the entity to which the debt was owed, the fact that the debt concerned his son's medical treatment, the dates of those medical treatments, and Plaintiff's son's name. It is inescapable that Radius' communication to the Letter Vendor at least "concerned," was "with reference to," and bore a "relationship [or] association" to its collection of Plaintiff's debt.

To answer the question of whether Defendant's conveying of information to the Letter Vendor was done "in connection with" the collection of Plaintiff's debt, one need only ask "why did the Defendant convey the information in Paragraph 30 of the Complaint to the Letter Vendor"? It was not so the Letter Vendor could then draft a "get well soon" card for Plaintiff's son on Defendant's behalf. Instead, the *sole purpose* behind Defendant's conveying of information to the Letter Vendor was so that the Letter Vendor could draft the collection letter that is attached as Exhibit A to the Complaint. Therefore, it is clear that Radius communication with its Letter Vendor was done "in connection with the collection of [Plaintiff's] debt" as that phrase is commonly understood because it was done so for the sole purpose of facilitating Defendant's collection of the Plaintiff's alleged Debt.

### 3. Case Law Holds That Defendants Communications Were "In Connection With" The Collection Of Plaintiff's Debt.

The Eleventh Circuit has twice, in <u>Hunstein</u> and again, in <u>Hunstein II</u>, held that a debt collector's communication with a letter vendor is, indeed, in connection with the collection of a debt. <u>Hunstein</u>, 994 F.3d at 1349. This Court should follow the same common-sense reasoning.

18

Starting with the plain meaning of the phrase "in connection with", the <u>Hunstein</u> court found that dictionaries have adopted a broad definition. <u>Id</u>. The "the Oxford Dictionary of English defines the key phrase "in connection with" to mean "with reference to [or] concerning," *In Connection With*, Oxford Dictionary of English at 369 (2010). Usage authorities further explain that the phrase "in connection with" is "invariably a vague, loose connective." *<u>Id</u>*. (*citing* Bryan A. Garner, Garner's Dictionary of Legal Usage 440 (3d ed. 2011)). Using this as a background, the court found that the defendant's transmittal to the vendor included "specific details" regarding the debt, including the plaintiff's status as a debtor, the precise amount of the debt, the creditor, and the fact that the debt concerned the plaintiff's son's medical treatment. <u>Id</u>. The Eleventh Circuit held, "**[i]t seems inescapable that [defendant's] communication to [the letter vendor] at least 'concerned,' was 'with reference to,' and bore a 'relationship [or] association' to its collection of [plaintiff's] debt**. <u>Id</u>. (Emphasis Added)

Exactly as in <u>Hunstein</u>, Radius in this matter also transmitted to the Letter Vendor information about the plaintiff's status as a debtor, the precise amount of the debt, the creditor, and the fact that the debt concerned the plaintiff's son's medical treatment. Therefore, it is respectfully submitted that this Court should follow the reasoning in <u>Hunstein</u> and <u>Hunstein II</u> and find that Defendant's communication with its Letter Vendor was done "in connection with" the collection of Plaintiff's Debt.

In <u>Khimmat</u>, the Court had little trouble in finding that the transmission of information from the debt collector to the letter vendor was a "in connection with" the collection of a debt. As stated above <u>Khimmat</u> and this case are materially identical. In rejecting the same arguments that Radius makes herein, the Court in <u>Khimmat</u> held:

In the Third Circuit, 'opening communication in an attempt to collect [the debtor's defaulted loan]…qualifies as a communication in connection with an attempt to collect a debt." Simon v. FIA Card Servs., N.A., 732 F.3d 29, 266 (3d Cir. 2013). And "**a letter that is not itself a collection attempt, but that aims to make . . . such an attempt more likely to succeed, is one that has the requisite connection."** Id. [Defendant] concedes that the communication between it and the letter vendor was a communication to facilitate the collection of outstanding debts. So, while it did not make a demand for outstanding debts, that alone is not dispositive, and commonsense dictates that [Defendant] made the communication in connection with the collection of a debt.

Id. at *3.

Exactly as in Khimmat, there is no factual dispute that Radius gave the information described in Paragraph 30 of the Complaint to the Letter Vendor so the Letter Vendor could take that information and make, print and mail a collector letter to the Plaintiff that sought to collect the Debt (see Exhibit A to the Complaint).

The Court in Khimmat also rejected the same arguments that Defendant makes in their Motion about how a communication must seek to motive a consumer to pay a debt to be made "in connection with" the collection of said debt. Specifically, the Khimmat Court held:

First, [Defendant] argues that only a communication that seeks to motivate a consumer to pay a debt is a communication in connection with a debt. Section 1692c(b) says otherwise, though. It contemplates communications with a creditor or the creditor's attorney, a consumer reporting agency, and the debt collector's attorney. Communications with those groups will not demand payment or motivate a consumer to pay a debt. Instead, they are communications that have a connection to the debt. [Defendant's} proposed interpretation would render superfluous the statute's exceptions for communications with these groups. In addition, [Defendant's] proposed interpretation would read the words "in connection with" out of the statute and limit the statute's reach to communications to "collect any debt." Those are not the words Congress used, though, and the Court must assume "in connection with" adds some meaning beyond just the actual collection activity.

Id. at *3.

The Court in Khimmat also rejected any attempt to use a multifactor test in determining whether a communication was in connection with the collector of any debt. Specifically, the Court in Khimmat rejected the Sixth Circuit's decision in Goodson v. Bank of Am., N.A., 600 F.

App'x 422, 431 (6th Cir. 2015) and <u>Grden v. Leikin Ingebr & Winters PC</u>, 643 F.3d 169, 173 (6th Cir. 2011) **because those cases were at odds with the Third Circuit's Opinion in <u>Simon</u>**. <u>Id</u>. at *4. Additionally, the Khimmat Court held these cases, "focus on a different provision of the FDCPA, Section 1692e, whose context suggests that it has a different focus than Section 1692c(b). And, in any event, because the phrase 'in connection with the collection of a debt' has a clear meaning in Section 1692c(b), the Court need not resort to extratextual factors that are more likely to muddy the waters than clarify them. See <u>Hunstein</u>, 17 F.4th at 1037." <u>Id</u>.

Defendant's citation to <u>Gregory v. Nationstar Mortg., LLC</u>, 2014 WL 1875167 (D.N.J. May 9, 2014) and <u>Krechner v. Nationstar Mortg. LLC</u>, 2015 WL 9260055, at *3 (E.D. Pa. Dec. 18, 2015) are not applicable to this case because those cases dealt with different sections of the FDCPA (1692g and 1692e respectively). Furthermore, the <u>Gregory</u> and <u>Krechner</u> cases dealt with letters sent *directly by the debt collector to the Plaintiff*. This case deals with information sent to a third party, *i.e.,* the Letter Vendor, and therefore different issues are raised as opposed to this case. As <u>Khimmat</u> states, "Section 1692e…has a different focus than Section 1692c(b)." <u>Id</u>. at * 4.

The Courts in <u>Gregory</u> and <u>Krechner</u> held that the letter's purpose in each was to convey information and not to induce payment, and therefore it was not sent "in connection with" the collection of a debt. In this case, the only reason that Radius conveyed information to the Letter Vendor was to so they could draft the collection letter attached as Exhibit A to the Complaint and mail said letter to Plaintiff. The purpose of the letter was to induce Plaintiff to pay the alleged debt. Therefore, unlike in <u>Gregory</u> and <u>Krechner</u>, Radius was not simply conveying information that was not meant to induce payment of the Plaintiff's Debt, the sole purpose of

conveying the information was to further the collection efforts with regard to Plaintiff's alleged Debt and induce the Plaintiff to pay the alleged Debt.

### 4. Conclusion.

The *sole reason* that Radius conveyed the information described in Paragraph 30 of Plaintiff's Complaint to the Letter Vendor was so the Letter Vendor could then take that information and generate the collection letter (Exhibit A to Complaint) sent to Plaintiff seeking to collect the Debt. Radius never denies or even pretends that their transmission of the information contained in Paragraph 30 of Plaintiff's Complaint was for any other reason than to further facilitate their efforts to collect Plaintiff's alleged Debt. Radius even admits this in their Motion, "True, the Letter that the vendor ultimately printed and sent contained a demand for payment…" [Def. Br. p. 11].

Therefore, the communication of information from Radius to the Letter Vendor was clearly "in connection with" the collection of Plaintiff's Debt.

### D. Conclusion

There is no question that Radius conveyed information to its letter vendor – including Plaintiff's name, status as a debtor, the amount he allegedly owed Newark Beth Israel, the fact that the alleged debt concerned medical services rendered to the Plaintiff's newborn child, the name of the newborn child, the dates of the medical treatments and the hospital's account numbers associated with the medical treatments – was information regarding a debt. Furthermore, Radius transmitted the information via an electronic channel – a medium. As such, Radius clearly "communicated" with its Letter Vendor concerning the Plaintiff. Furthermore, there is no question this "communication" was done for the sole purpose of facilitating the collection of Plaintiff's alleged Debt and furthering Defendant's attempts to collect said Debt.

Therefore, it is respectfully submitted that Radius "communicated" with the Letter Vendor "in connection with" the collection of Plaintiff's alleged Debt to Newark Beth Israel, and Defendant's arguments in their Motion should be rejected.

## POINT III

## DEFENDANT'S REMAINING ARGUMENTS ARE MISPLACED

### A.  Defendant's Belief As To What Congress's Actual Purpose Was In Drafting § 1692c(b) Was Does Not Defeat Plaintiff's Claims.

Radius argues that Plaintiff's claim should be dismissed because it is not exactly what Defendant subjectively believes that Congress actually intended as the purpose behind § 1692c(b). First, this is not grounds for dismissal of a claim, and nowhere is it written that a claim is required to promote the purposes of the statute. *A violation of the plain language of the statute is a violation,* regardless of whether or not it has an unintended effect. Even so, secondly, the claim and the plain language of the statute do advance the purpose of the statute. Defendant contends that the Court should look to statutory interpretation to derive another meaning from the plain language of § 1692c(b), but this is uncalled for. "When [the court] find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances." Demarest v. Manspeaker, 498 U.S. 184, 190 (1991), *superseded by statutory amendment on other grounds*, 28 U.S.C. § 1821; *see also* Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982) (further inquiry warranted only in rare cases where literal application of statute would produce a result, "demonstrably at odds with the intentions of its drafters."); Dutton v. Wolpoff & Abramson, 5 F.3d 649 (3d Cir. 1993).

"[I]t is Congress, not a court that decides what are the best ways to protect the interests at stake." Dutton, 5 F.3d at 654; *See also* C.I.R. v. Lundy, 516 U.S. 235, 252 (1996) (courts "are bound by the language of the statute as it is written" and "are not at liberty to rewrite [the] statute

because [the court] might deem its effects susceptible of improvement." (internal citations omitted)).

Here, Congress has decided in drafting § 1692c(b) to prohibit all communications except in three circumstances and to six excepted people. Is that not enough evidence that Congress' prohibiting was not all encompassing, but clearly thought out and determinative of the situations in which a debt collector should communicate? If Congress had wanted to include letter vendors, it could have written that exception into the statute. For instance, California, Iowa, Maryland, Vermont, and Wisconsin all were capable of composing a statute that excepted letter vendors and other persons deemed to have a "legitimate business need" for the debtor's information. *See* Cal. Civ. Code § 1788.12(e); Fla. Stat. §559.7(5); Iowa Code § 537.7103(3)(a)(2); Md. Code, Commercial Law, § 14-202; Vt. Code R. 3-2-103:CP 104.3(e); Wis. Stat. § 427.104.

In <u>Khimmat</u>, the Court rejected the same argument put forth by Radius. In <u>Khimmat</u>, the Court easily rejected the same argument Radius made in the Motion holding:

> Of course, the best insight into any statute's purpose is the words that Congress used. When Congress has used clear language, as it has here, a court should not set that language aside to effectuate what it thinks Congress's purpose was, except in the most exceptional of circumstances. [Defendant] has not shown those circumstances to be present. The FDCPA has a section that addresses its purpose and that identifies the "invasion [ ] of individual privacy" as one of the harms against which the statute is directed. 15 USC § 1692(a). **Disclosure to a letter vendor is a form of invasion of individual privacy. Whether it is one that Congress intended to forbid is beyond this Court's power to say**. But that statement of purpose means that the Court's reading of the statute is consistent with the language and purpose, so circumstances do not exist to justify setting aside the statutory language in a quest to divine its purpose.

<u>Id</u>. at * 5 (Emphasis added)

It is respectfully submitted that this Court follow the Khimmat Court's reasoning above. The language of §1692c(b) is clear. If Defendant thinks that Congress' intent was different than what they wrote in the FDCPA, Defendant's remedy lies with Congress not the Courts.

**B. Defendant's Agency Argument Is Unavailing.**

Defendant argues in their Motion that the Letter Vendor was their agent, that they and their Letter Vendor are therefore one in the same, and therefore the Letter Vendor was not a third party. The Court in <u>Khimmat</u> dealt with and swiftly rejected this exact same argument in two-parts. First, the Court held that even if a letter vendor were an "agent" of the debt collector, there is no exemption in the statute for them. Specifically, the Court held:

> The statute does not support that argument. As discussed, Section 1692c(b) provides six exceptions to its prohibition on communications in connection with a debt, for the consumer, his attorney, a consumer reporting agency, the creditor, the attorney of the creditor, and the attorney of the debt collector. Three of these exceptions are for attorneys, **who have an agency relationship with their clients. Congress's explicit reference to some types of agents—attorneys—and not others indicates that Congress expected the statute to apply to agents unless a specific exemption applied.** Otherwise, Congress would not have needed to exempt those agents in the first place. And by specifying some, the doctrine of *expressio unius est exclusion alterius* teaches that Congress intended to exclude other agents from the exemption. *See* <u>Keeley v. Loomis Fargo & Co.</u>, 183 F.3d 257, 266 (3d Cir. 1999).

<u>Id</u>. at *4. (Emphasis Added)

In addition, the Court in <u>Khimmat</u> held that the defendant had not proven by any evidence that the letter vendor was their agent. Specifically, the Court held:

> Even if Section 1692c(b)'s exceptions applied to agents other than those listed in the statute, the Court has no basis to conclude that [defendant's] letter vendor was an agent. An agency relationship exists when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent. *See* <u>Covington v. Int'l Ass'n of Approved Basketball Offs.</u>, 710 F.3d 114, 120 (3d Cir. 2013). [Defendant] states that debt collectors "contract with these third-party [letter] vendors who exist solely to assist the principal debt collector." (ECF 12-1 at 16.) **<u>But [Defendant] has not asserted that it directed or had control over the manner the letter vendor would print and mail its letters</u>**. Because [defendant] has made no showing of the relationship between it and the letter vendor, the Court cannot conclude that an agency relationship existed.

<u>Id</u>. at *4. (Emphasis Added)

Exactly as in <u>Khimmat</u>, Radius has not shown the Letter Vendor is their agent, but merely an independent contractor contracted by the Defendant to print and mail letters that

conform to the form Defendant requests. Defendant has not asserted that it controls the time, manner, and place that the letter vendor prints and mails its letters. Defendant has made no showing of the relationship between itself and the letter vendor. Defendant certainly cannot claim to control the time, manner, or method in which the letter vendor performs its contracts (i.e. printing and mailing letters).

It is respectfully submitted that Defendant has not proven that the Letter Vendor is its agent because it failed to prove the requisite control. Furthermore, even if Defendant could prove the Letter Vendor was its agent, this could not make any difference because as shown above, there is no exemption for an agent of this type in Section 1692c(b), only other types of agents. Therefore, Defendant's agency argument must be rejected.

### C. Defendant's Arguments Regarding FTC And CFPB Guidance Are Misplaced.

Defendant argues that the Federal Trade Commission ("FTC") and Consumer Financial Protection Bureau ("CFPB") have approved the use of letter vendors, but a close reading of their guidance shows otherwise. In addition, each of the exact arguments that Radius makes in their Motion regarding FTC and CFPB guidance were rejected by the Court in Khimmat.

### 1. Defendant's Citation to the 1998 FTC Staff Commentary on the FDCPA, 53 FR 50097-02.

In Khimmat, the Court rejected the defendant's use of same citation to the 1998 FTC Staff Commentary on the FDCPA that Radius cites to in their Motion. The Khimmat Court held:

> the FTC guidance cited by [Defendant] does not address the legality of letter vendors at issue in this case. It notes support for a debt collector's agent providing notice to a consumer, and similar support for phone and telegraph company employees. Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 FR 50097-02. The Court has already concluded letter vendors are not agents of a debt collector, and phone and telegraph companies are wire-based, regulated utilities, plainly distinguishable from private letter vendors.

Id. at *6.

It is respectfully submitted that this Court follow the <u>Khimmat</u> holding and hold that Defendant's citation to the 1998 FTC Staff Commentary does not support their argument that its communication of information regarding Plaintiff's Debt to a letter vendor was appropriate under § 1692c(b). This is especially true because as noted above, Defendant has not shown that the Letter Vendor it used to draft and mail the collection letter to Plaintiff is its agent.

**2. Defendant's Citations to CFPB Guidance Are Misplaced.**

Defendant argues that CFPB Regulation F and the associated commentary in the Federal Register supports its position that a debt collector may communicate with a letter vendor in connection with the collection of any debt. This exact argument was again rejected in <u>Khimmat.</u> In <u>Khimmat</u>, the Court rejected the same argument Radius makes by holding:

> Regulation F just permits a debt collector to use a vendor's address as its own when disclosing its mailing address to consumers. See 12 C.F.R. § 1006.34(c)(4)(iii). A debt collector receiving information from a consumer through a letter vendor is not the same as a debt collector communicating information to or through a letter vendor. Furthermore, [Defendant's] citation to the Federal Register is of no legal significance, and owed no deference, as it is not a rule, but only the reasoning behind the CFPB's adoption of Regulation F. 86 FR 5766 at 5845. Consequently, because the agencies tasked with regulating and enforcing the FDCPA have not addressed the use of letter vendors by debt collectors in any legally significant way, and because the statutory language is not subject to a different reading, the Court will afford no deference to the indeterminate actions of the CFPB and FTC.

> <u>Id.</u> at * 5

It is respectfully submitted that this Court follow the <u>Khimmat</u> holding and hold that Defendant's citation to Regulation F of the CFPB does not support their argument that its communication of information regarding Plaintiff's Debt to the letter vendor was appropriate under § 1692c(b).

D.  **Any "Absurd Results" Defendant's Claim Would Result From A Ruling Against Them In This Case Would Be Congress' Responsibility To Fix**.

Defendant tries to confuse the issue before this Court by claiming that if the Court holds that their communication with the letter vendor violated § 1692c(b), that this would lead to absurd results. This argument should be rejected by this Court.

Defendant's examples of phone calls and emails sent via the internet and the information being transmitted through the telephone and internet provider are not analogous. Those are not communications to a third party. The phone call or email is not sent to the third party. But here, there was a communication directly to the letter vendor. As such, the transmittal of information directly to the letter vendor is a "communication in connection with the collection of a debt under § 1692c(b). Furthermore, as the Court held in <u>Khimmat</u>, when rejecting a similar argument, "phone and telegraph companies are wire-based, regulated utilities, plainly distinguishable from private letter vendors". Id. at *6.

A Court's job is to read the statute as written. If Defendant claims that reading the statute as plainly written would lead to "absurd results" regarding their employees, emails or phone calls, then their remedy is not with the Courts, but with Congress.

E.  **Defendant's First Amendment Argument Must Be Rejected Outright.**

Defendant's last gasp, Hail Mary effort to confuse the issue before this Court is to attempt to claim that if this Court denies their Motion, such a decision "risks § 1692c(b) being struck down as an unconstitutional restriction on commercial speech." [Def. Br. p. 19]. Defendant does not even argue that § 1692c(b) the FDCPA is an unconstitutional restriction of commercial speech, they only argue that there is a potential risk that it could be, but only if they lose their Motion. This absurd argument was rejected by the Court in <u>Khimmat</u>. That Court held:

The FDCPA restricts debt collectors' ability to engage in certain types of speech. The speech in question is commercial speech, which is "expression related solely to the economic interests of the speaker and its audience." <u>Greater Philadelphia Chamber of Com. v. City of Philadelphia</u>, 949 F.3d 116, 137 (3d Cir. 2020). Courts apply intermediate scrutiny to restrictions on commercial speech. See id. Under that standard, the government must demonstrate "a proportionate fit between a substantial interest and its legislative attempt to advance that interest." Id. The government has a substantial interest in limiting the number of people exposed to knowledge that a consumer is a debtor, and the FDCPA proportionately advances this interest. The statute restricts communications in connection with the collection of a debt, but with sufficient exceptions to allow a debt collector to continue to collect. The FDCPA satisfies intermediate scrutiny and is permissible under the First Amendment. Because the statute passes Constitutional muster, [Defendant's] constitutional avoidance argument becomes irrelevant.

<u>Id.</u> at 5.

Since the FDCPA was enacted in 1977, no Court has held that it, our any section of it, violates the First Amendment. Furthermore, as shown above, and articulated by the Court in <u>Khimmat</u>, the FDCPA with respect to § 1692c(b) clearly passes Constitutional muster. Therefore, Defendants ludicrous argument that §1692c(b) of the FDCPA might be unconstitutional if this Court denies their Motion is an outrageous argument that makes no sense and should be rejected by this Court for the same reasons as the Court in <u>Khimmat</u> articulated.

## CONCLUSION

The language of the FDCPA does not permit communications to third parties, including letter vendors. The Court must take Congress at its word. For the reasons presented here Defendant's Motion For Judgment On The Pleadings should be denied. Alternatively, if the Court deems the Complaint insufficient, Plaintiff requests leave to amend the Complaint.

Dated: Floral Park, New York
February 22, 2022

/s/ Ryan Gentile
By:_____
Ryan Gentile, Esq.

*Attorney for Plaintiff*
110 Jericho Turnpike – Suite 100
Floral Park, NY 11001
Tel: (201) 873-7675
Fax: (212) 675-4367
rlg@lawgmf.com